[Civ. No. 3369. Second Appellate District, Division One.—January 15, 1921.]

## C. L. HYDE et al., Respondents, v. LOUIS J. WILDE et al., Appellants.

[1] MUNICIPAL CORPORATIONS — STREET CONSTRUCTION—ADOPTION OF VOID ORDINANCE—MANDAMUS.—*Mandamus* will not lie to compel the city council of the city of San Diego to either pass or submit at a special election a proposed ordinance having to do with the matter of material to be used in street construction and surface work, where such proposed ordinance, if enacted, would be invalid.

[2] ID.—RIGHT OF ELECTORS TO COMPEL ADOPTION OF ORDINANCE— CONSIDERATION OF SUBJECT MATTER.—Electors, by the mere filing of a petition otherwise sufficient proposing an ordinance for adoption, have not the right to compel the adoption of the ordinance or the submission of the same to a vote of the electors, regardless of the subject matter contained therein.

[3] ID.—IMPROVEMENT OF STREETS—ADOPTION OF SPECIAL REQUIRE-MENTS—APPLICATION OF GENERAL LAW.—While under the constitutional grant of a municipal power a city has the right to include within her charter provisions requirements as to the manner and procedure to be adopted for the guidance of her officers in improvement of the streets, and such provisions will prevail over the general law, where no particular provisions are made covering that matter, or where the charter expressly so provides, the general law controls.

[4] ID.—SELECTION OF MATERIAL—DISCRETION OF COUNCIL—CONTROL OF BY LEGISLATION.—The Vrooman Act (Deering's Gen. Laws 1915, p. 1715), which is the general law of the state under which street improvement work is prosecuted, confers upon the city council a discretion to determine as to the kind of material to be used in the improvement of a street, and in the exercise of that discretion the city council performs an administrative act, not legislative in character, within the meaning of the constitutional provision reserving to the people the right to initiate and refer legislation.

[5] ID.—MUNICIPAL AFFAIRS — WHEN STATE LAW CONTROLLING. — Where no special procedure touching a municipal subject is outlined by a freeholders' charter, the state law always controls by force of the constitution.

APPEAL from a judgment of the Superior Court of the County of San Diego. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

S. J. Higgins, City Attorney, F. McCleneghan, Deputy City Attorney, M. R. Thorp and Paul S. Honberger for Appellants.

Charles C. Crouch for Respondents.

JAMES, J.—Plaintiffs, alleging themselves to be duly qualified and registered voters within the municipal limits of the city of San Diego, brought this proceeding against the mayor and common council of said city to compel the council to either pass or submit at a special election a certain ordinance desired to be put into effect by the petitioners. A judgment for the issuance of a peremptory writ was made after hearing had, and defendants have appealed.

The proposed ordinance had to do with the matter of material to be used in street construction and surface work, and the material clause thereof is as follows:

"Section 1. That from and after the adoption of this ordinance, it shall be unlawful to construct, or for any person or official of the city to order the construction of, any patented pavement, or patent process pavement, upon any of the public streets, alleys, or rights of way in the City of San Diego, until the owner of such patent shall have transferred to the city all right to the use of the same therein, with the privilege of any person to manufacture and lay the same upon the streets under any contract that may be awarded to him, or entered into by him with the City of San Diego, or the Superintendent of Streets of the said city."

Numerous grounds of objection to the claim of the petitioners were raised by the answer made to the petition, and it is insisted here that, upon any one of the grounds alleged, the petition should have been denied. It will not be necessary to give particular attention to each of the grounds urged by appellants. A determination of the one main question argued in the briefs is all that is essential to a consideration of this appeal. This contention is, briefly, that the city of San Diego is governed by the general law of the state in the matter of the improvement of her streets; that under the state law the appropriate authorities of the city are given the right to determine the kind of material to be used in street improvement work, and that the provisions of the proposed ordinance, if valid, would affect a modification and repeal of the state law; that only the state legislature, or the electors of the state as a body acting under the initiative, may change the state law. The last proposition is extended by the argument that the proposed ordinance would likewise operate to amend the freeholders' charter, authority for which, in the manner proposed, does not exist in law. The basis for the latter argument will more fully appear in the statement hereinafter made. It is admitted that the petition presented by the plaintiffs was sufficient in form and substance. The question is, was the subject matter of the proposed ordinance a matter of legislative nature such as is intended to be covered by the right reserved in the people to initiate or prevent legislation?

[1] If the proposed ordinance does not fall within the purview of the initiative reservation, then petitioners would have no right to insist that the city council pass the ordi-

nance or call an election and submit it to a vote, for nothing would be thereby accomplished, and mandate is never permitted to be invoked to compel the performance of acts which will have no effect in law. (*Navajo etc. Mining Co.* v. *Curry,* 147 Cal. 582, [109 Am. St. Rep. 176, 82 Pac. 247] ; *Wiedwald* v. *Dodson,* 95 Cal. 450, [30 Pac. 580].) In *State ex rel. Davies* v. *White et al.,* 36 Nev. 334, [50 L. R. A. (N. S.) 195, 136 Pac. 110], it is said: "The proposition that a writ of mandate will not issue to compel respondents to submit to the electors of the city a proposed ordinance that would be void even if approved by a majority of the electors is too clear for discussion or the citation of authorities. It remains only to consider whether the proposed ordinance would be valid if enacted." Our supreme court, in the case of *Hopping* v. *Council of the City of Richmond,* 170 Cal. 605, [150 Pac. 977], has said: "Executive powers are frequently committed to the city council and they are sometimes exercised by declarations in the form of an ordinance or resolution. The fact that executive action is taken by ordinance or resolution would not make it subject to the power of the referendum. With respect to such action, no matter how effected, the people, under the constitutional reservation, would not have the power of invoking the referendum to reject or approve them by popular vote. . . . We think the provisions of the referendum should be held applicable to all ordinances and resolutions which constitute an exercise of legislative power. . . . To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city. . . . If the council should, either by resolution or ordinance, do something purely executive in character, unmixed with any exercise of legislative power, the provisions of this section should be held inapplicable thereto." [2] We cite this case more particularly to the point that electors, by the mere filing of a petition otherwise sufficient proposing an ordinance for adoption,

have not the right to compel either the adoption of the ordinance or the submission of the same to a vote of the electors, regardless of the subject matter contained therein. The freeholders' charter of the city of San Diego contains this provision: "The mode and manner for the improvement of streets, lanes, alleys, places or courts in this city, where an assessment is levied for the payment of any part or portion of the expense thereof, shall be as prescribed by the general law of the State of California, relative to the improvement of streets, lanes, alleys, places or courts in municipalities, in force at the time proceedings were taken for the improvement of the same." No other provision is contained in the charter referring to the matter of the improvement of streets, etc. [3] Under the grant of municipal power a city has the right to include within her charter provisions requirements as to the procedure to be adopted for the guidance of her officers in improvement of the streets, and such provisions will prevail over the general law. (*Cole* v. *City of Los Angeles,* 180 Cal. 617, [182 Pac. 436]; *Hayes* v. *Handley et al.,* 182 Cal. 273, [187 Pac. 952].) Where no particular provisions are made covering a matter falling within the classification of a "municipal affair," the state law controls. Hence the condition with respect to the San Diego charter is the same as though no reference had been contained in the charter affecting the matter of public streets at all, for the provision quoted is merely declarative of the law which would control in the absence of such declaration. (*Clouse et al.* v. *City of San Diego et al.,* 159 Cal. 434, [114 Pac. 573].) [4] The Vrooman Act (Deering's Gen. Laws 1915, p. 1715), which is the general law of the state under which street improvement work is prosecuted, provides that when the public interest requires the city council may order streets or ways to be graded, planked, paved, or repaved. The act further provides as follows: "The words 'paved' or 'repaved,' as used in this act, shall be held to mean and include pavement of stone, whether paving blocks or macadamizing, or of bituminous rock or asphalt, or of iron, wood or other material, whether patented or not, which the city council shall by ordinance adopt." By this provision two things seem clear: First, that a discretion is conferred by the state law upon the city council to determine as to the kind of

material to be used in the improvement of a street; second, that the discretion confided is not intended to be exercised by a "blanket" declaration or ordinance, but is to be exercised with respect to the particular work to be done as the same becomes necessary. If discretion is given to the city council by statute to make the selection of material, then the ordinance proposed, as appellants argue, would have the effect, if valid, of repealing in part the state law. We are of the opinion that the statute of the state does confer a discretion upon the city council; that in the exercise of that discretion the council performs an administrative act, not legislative in character, within the meaning of the constitutional provision reserving to the people the right to initiate and refer legislation. To make this position clearer, we may here inquire, could the city council, under the authority of the law, pass and adopt an ordinance providing that in the future all streets of the city should be paved or repaved with rock and no other substance? Would such an ordinance have any binding effect upon the council or a succeeding council when the matter of determining the work to be done on a particular street arose? We think clearly that no such ordinance could be adopted which would have such general effect. It would fall within the class of matters as to which the court said in *Thompson* v. *Board of Trustees,* 144 Cal. 281, [77 Pac. 951], "it was beyond the powers of the board by ordinance or otherwise to divest itself and succeeding boards, for a longer or a shorter period, of powers vested in it by the general law for the benefit of its constituents. For this would be to repeal *pro tanto* the general law. Nor, if this objection could be obviated, would it have been competent for the board thus to bind its successors." In the case of *Hopping* v. *Council of City of Richmond, supra,* the court had in mind undoubtedly the question as to whether the power of the initiative and referendum could be made to extend at all to street improvement procedure, when it said: "There may be grounds for excluding from the operation of these powers legislative acts which are special and local in their nature and in which the entire body of citizens who shall exercise the power of referendum and initiative is not interested, such as resolutions to make local improvements and the like. This question is not before us, for the matters determined by the

resolution are not local to any particular part of Richmond." In *Chase* v. *Kalber*, 28 Cal. App. 561, [153 Pac. 397], wherein was concerned a mandate petition to require the town clerk to act with respect to a referendum petition filed against a certain resolution passed by the board of trustees establishing the grades of streets and avenues, the court declared in denying the writ: "However, as before stated, we have been led to the conclusion upon a reconsideration of the case, that, notwithstanding that resolutions of intention to establish grades or otherwise improve streets are of a legislative character, none of the steps necessary to be taken in proceedings for street improvement was intended by the people to come within either the power of the initiative or that of the referendum as delegated by the people through their constitution to the electors of municipal corporations." As expressive of the same impression as to the law, this court in *Starbuck* v. *City of Fullerton*, 34 Cal. App. 683, [168 Pac. 583], that being a referendum case where it was sought to cause to be submitted to a vote of the electors an ordinance of intention to open a street, passed by the local board of trustees—said: "In our opinion, the constitutional provision giving and guaranteeing to electors the right to the initiative and referendum was not designed to furnish a means by which street improvements local in character can be either commenced or prevented by the use of the initiative or referendum." In this case it is not necessary to place the decision upon the ground that no part of street improvement proceedings may be subjected to these rights reserved to the people. We hold simply that the state law defines the powers of city councils and boards of trustees in the matters concerned in the proposed ordinance, and that neither the city council itself nor the electors, in the manner here attempted, have the right to change, modify or restrict the power given under the statute.

It is said by respondents that, as the city charter contains a provision authorizing the council "to contract bonded indebtedness for any other purpose authorized by this charter or the general law of the state of California," somehow some work might be done by way of improvement of streets which would not come within that class mentioned in the charter provision making the general law applicable "where an assessment is levied for the payment of any part or por-

tion of the expense thereof.'' Our attention is not called to any provision of the charter defining or limiting the power of the city council to determine what material shall be used in any class of street work, and it is very clear that the power in that respect is all derived from the state law, by which it must be concluded that discretion is made to vest in the municipal board to select material as occasion requires. We have already made it clear that the condition of the charter wherein street improvement work is referred to is of no different effect than had no reference whatsoever been contained therein. [5] Where no special procedure is outlined touching a municipal subject, the state law always controls by force of the constitution. (Sec. 8, art. XI, Const.)

In our opinion, the petitioners were not entitled to the writ awarded to them by the trial court.

The judgment is reversed; it is further ordered that the superior court enter its order dismissing the proceeding.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 11, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 14, 1921.

All the Justices concurred.